IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELIZABETH RAMOS-RODRIGUEZ,

Plaintiff

v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF
SOCIAL SECURITY,

Defendant

CIVIL 13-1464 (ADC)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

A. PROCEDURAL HISTORY

This action is brought under the provisions of Title 42 U.S.C. § 405(g) and Title 5 U.S.C. § 706.  On June 13, 2013, plaintiff Elizabeth Ramos-Rodriguez filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied her application for a period of disability and Social Security disability insurance benefits.  Plaintiff filed a "motion for order reversing the Commissioner of Social Security's decision with memorandum of law" on February 7, 2014. (Docket No. 16)[1]. The 13-page motion was supported with a 5-page memorandum of law urging reversal. Defendant Commissioner filed a memorandum in support of the final decision on April 9, 2014. (Docket No. 23). Plaintiff then filed a "reply to defendant's memorandum of law" on April 16, 2014. (Docket No. 19)[2].

_____

[1]The memorandum errs in part in relation to gender and the step of the sequential evaluation process where the administrative law judge ended the analysis.  It is otherwise comprehensive in its content and argument.

[2]The memorandum of law reaffirms plaintiff's previous argument and seeks to have the court strike the Commissioner's memorandum, ignoring the

CIVIL NO. 13-1464 (ADC)                2

Plaintiff has the burden of proving that she has become disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2207 (1987); Rodriguez-Gonzalez v. Astrue, 854 F. Supp. 2d 176, 179 (D.P.R. 2012).  A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months.  See 42 U.S.C. § 416(i)(1).  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits.  There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986); Quintana v. Commissioner of Social Security, 294 F. Supp. 2d 146, 148 (D.P.R. 2003).

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole.  In order to be entitled to such benefits, plaintiff must establish that she was disabled under the Act at any time between July 24, 2009, the alleged onset date, and October 24, 2012, the date of the final decision.  Plaintiff meets the earnings requirements for disability benefits under the Social Security Act until December 31, 2016, but not after that date.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987); Hatcher v. Commissioner of Social Security, 770 F. Supp. 2d 452, 454 (D.P.R. 2011).

---

Commissioner's mention of the reason for its own tardy filing. (Docket No. 18 n.1).

CIVIL NO. 13-1464 (ADC)                3

As plaintiff notes in her memorandum of law, she was treated by Dr. Armando Perez De Jesus, psychiatrist, 157 times between July 14, 2006 and September 12, 2012 and diagnosed major depressive disorder, recurrent, severe, and anxiety disorder. (Tr. at 98-190, 257-65, 272-78). He also generally found plaintiff alert, clean, cooperative and communicative but ultimately found her disabled with a poor prognosis. Her primary care doctor, Dr. Hiram Pabon Mateo, Family Medicine, treated plaintiff between May 5, 2008 and March 28, 2011 for obesity, hypertension, hypothyroidism, and cervical and lumbar pain. (Tr. at 500-50). Plaintiff was prescribed numerous medications in attempts to stabilize her progressive depression and anxiety, such as Cymbalta, Buspar, Risperdal, Ativan, and Mellaril among others. These were prescribed by Dr. Perez. (Tr. at 429-34). Dr. Pabon Mateo prescribed medication for her cholesterol and thyroid condition. On May 18, 2011 and December 12, 2012, Dr. De-Jesus gave plaintiff a poor prognosis and found poor ability to perform work-related activities secondary to severe major depressive disorder and anxiety disorder. (Tr. at 257-62-637-641). His assessments are fairly consistent but reflect a worsening condition. Three months prior to the administrative hearing, plaintiff was given 30 and 60 mg. samples of Cymbalta, a total of 28 pills, by Dr. Perez. (Tr. at 636). She continued with other medications. A mental residual functional capacity assessment by Dr. Perez dated December 11, 2012 reports a current GAF of 49 and a highest GAF of 50 for the past year. She continued to use multiple medications. The doctor concluded that plaintiff was unable to work.

After evaluating the evidence of record, Administrative Law Judge Harold Glanville entered the following findings on October 24, 2012:

1.   The claimant last meets the insured status requirements of the Social Security Act through December 31, 2016.

2.   The claimant has not engaged in substantial gainful activity since July 24, 2009, the alleged onset date. (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: lumbar, cervical and mental conditions and hypothyroidism. (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she is limited to unskilled work that involves simple and repetitive one or two step instructions and tasks and has to avoid dealing with the public.

6.   The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7.   The claimant was born on April 28, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.   The claimant has at least a high school education and is not able to communicate in English (20 CFR 404.1564).[3]

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability as defined in the Social Security Act, from July 24, 2009, through the date of this decision. (20 CFR 404.1520(g)).

Tr. at 22-31.

The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work she has performed in the past due to a severe impairment or combination of impairments. The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work. If the claimant cannot, a

---

[3]Plaintiff has a four-year college education. (Tr. at 381).

CIVIL 13-1464 (ADC)                    5

finding of disability will follow.  See 20 C.F.R. § 404.1520(f).  At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors.  See Nguyen v. Chater, 172 F.3d 31 (1ᵈᵗ Cir. 1999); Lancelotta v. Secretary of Health & Human Servs., 806 F.2d 284 (1ˢᵗ Cir. 1986); Vázquez v. Secretary of Health & Human Servs., 683 F.2d 1, 2 (1ˢᵗ Cir. 1982); Velez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 467 (D.P.R. 2010).

B. ARGUMENT

Plaintiff argues in her memorandum of law that the administrative law judge substituted his own judgment for uncontroverted medical evidence in determining that plaintiff retains the residual functional capacity to perform unskilled light exertion work in the national economy that involved simple and repetitive one or two step instructions and tasks that avoid dealing with the public.  See Rose v. Shalala, 34 F.3d 13 (1ˢᵗ Cir. 1994); Rosado v. Sec'y of Health & Human Svcs., 802 F.2d 292, 293-94 (1ˢᵗ Cir. 1985).  Indeed, the entire concept of work that involves simple and repetitive one or two step instructions is strongly attacked.  Plaintiff takes issue with the weight given by the administrative law judge to the medical reports and generally argues that the administrative law judge employed the incorrect legal standard, particularly in giving little weight to the opinion of plaintiff's treating physician. See 20 C.F.R. § 404.1527(c). Plaintiff complains that the hypothetical questions asked by the administrative law judge of the vocational expert were defective, since the questions did not accurately portray plaintiff's limitations. She also argues that the physical and mental residual functional capacity assessments made by the administrative law judge are incompatible with the finding of severe limitations due to lumbar, cervical and mental conditions and hypothyroidism.  Plaintiff attacks the final decision that plaintiff is not under a

CIVIL 13-1464 (ADC)                    6

disability as unsupported by substantial evidence in the record when looking at this record as a whole.

The defendant responds in turn to plaintiff's allegations, but also stresses that the administrative law judge complied with the requirements of the substantial evidence rule, and that the judge was not required to give controlling weigh to the opinion of the treating physician because of inconsistencies in his own findings but also because of conflict with opinions of consultative physicians. The Commissioner also argues that the residual functional capacity assessment of the administrative law judge is wholly supported by the testimony of the vocational expert. It is also argued that credibility determinations by the administrative law judge were valid and completely within the realm of the powers of the Commissioner, particularly when the allegations are not supported by the evidence of record when looking at the record as a whole.

C. ADMINISTRATIVE HEARING

At the administrative hearing held in Ponce, Puerto Rico on October 17, 2012, plaintiff was represented by attorney Felix Arquer Roman. Plaintiff testified that after she stopped working, she attempted to go back to work but her depression did not allow it. (Tr. at 40). She lives with her husband and daughters (ages 11 and 15 at that time) and her sister helps her with house chores. Her depression does not allow her to do anything. (Tr. at 43). She spends a lot of time in bed and is not motivated to do anything.

Plaintiff was asked questions related to her psychiatric treatment with Dr. Armando Perez beginning in 2006. The doctor noted her deterioration which plaintiff attributed to situations at home and personal situations. (Tr. at 45). She loses motivation, does not care, and takes additional medication in order to sleep.

CIVIL 13-1464 (ADC)                    7

Dr. Ariel Cintron Antonmrachi, vocational expert, testified noting plaintiff's previous relevant work as data entry clerk. Asked a hypothetical question by the administrative law judge, considering a young person with a college education, with a vocational profile that is sedentary and semi-skilled with certain functional limitations, the vocational expert testified that there were jobs in the economy of Puerto Rico and in the local economy of the southern part of Puerto Rico that plaintiff could perform, such as Small Products Assembler II (DOT#739.687-030), a light and unskilled occupation,  Ticket Printer and Tagger (DOT #652.685-094), a light and unskilled occupation, and Table Worker (DOT #783.687-030), a light and unskilled occupation. (Tr. at 30, 47-48).  Asked hypothetical questions by counsel,  including a person having marked problems in concentration and remembering immediate events, the vocational expert testified that such a person would not be able to perform a job.  A person with poor judgment could not perform those jobs because such a person could not make decisions. (Tr. at 50). If there were limitations in interacting with fellow workers, the same conclusion would follow.  The same conclusion would be reached if the person had frequent absences from work.  And the use of medication which caused drowsiness would also not allow the person to engage in sustained work activity.

Counsel then presented a terse argument to the administrative law judge.

### D. SUBSTANTIAL EVIDENCE RULE ANALYSIS

Plaintiff argues that the administrative law judge did not give proper weight to the treating physician's medical reports and opinions. It is well settled that even the opinions of treating physicians are not entitled to greater weight merely because they are treating physicians.  Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22

CIVIL 13-1464 (ADC)                    8

(1st Cir. 1982); <u>Pérez v. Sec'y of Health, Educ. & Welfare</u>, 622 F.2d 1, 2 (1st Cir. 1980); <u>Delgado-Quiles v. Comm'r. of Soc. Sec</u>., 381 F. Supp. 2d 5, 8-9 (D.P.R. 2005); <u>Rosado-Lebrón v. Comm'r of Soc. Sec.</u>, 193 F. Supp. 2d 415, 417 (D.P.R. 2002).   The administrative law judge  considered the treating physician's opinion about plaintiff's impairments, but in view of the overall record, including the inconsistencies in the numerous reports and conclusions of Dr. Perez, controlling weight was not granted to Dr. Perez's conclusions.  Indeed, little weight was given to the opinion of the doctor.

Controlling weight may be granted when the opinion of the treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §404.1527(d).  The opinion of such a treating physician can be rejected if it is inconsistent with other substantial evidence in the record, but also when it is not supported by the physician's own medical findings.   The weighing of such inconsistencies is a function delegated to the administrative law judge, not to the court on judicial review.   Thus , the administrative law judge was not required to give the opinions controlling weight.  <u>See</u> 20 C.F.R. § 404.1527(d); <u>Berríos-Vélez v. Barnhart</u>, 402 F. Supp. 2d 386, 391 (D.P.R. 2005); <u>cf.</u> <u>Sánchez v. Comm'r of Soc. Sec.</u>, 270 F. Supp. 2d 218, 221 (D.P.R. 2003).

The details of the administrative law judge's findings and final decision exemplify the limits of the court's powers to review the final decision.  While I have not detailed the extensive and repetitive medical information in Dr. Perez's progress notes, as well as in other notes, assessments and reports, and notwithstanding the comprehensive memorandum filed by plaintiff on February 7, 2014, I note that the final decision reflects a reasonable balancing and weighing of evidence by the administrative law judge.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369,

CIVIL 13-1464 (ADC)                    9

374 (1st Cir. 1985); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982); Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).   In that weighing, the power to resolve conflicts in the evidence lies with and has been exercised by the Commissioner.  Id.; see Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).  The rationale of the administrative law judge is extremely  detailed, and a reasonable weighing of the evidence does not point to a requirement that the Commissioner find plaintiff to be disabled under the Social Security Act.   The reports, progress notes, assessments and conclusions of Dr. Armando Perez De Jesus, plaintiff's treating physician, (Tr. at 435-99, 555-62, 630-36, 637-41), when compared with the medical assessments, notes,  and reports of Dr. Hiram Pabon Mateo (Tr. at 500-50), Dr. C. Jusino Berrios (Tr. at 564-78, 586-99), Dr. Israel Gonzalez (Tr. at 579, 604), Dr. Manuel Brignoni  (Tr. at 580-83), Dr. Mayra Vera Ramirez (Tr.  at 605-14), and Dr. Ramon A. Ruiz Alonso (Tr. at 617, 618-625), do not lead to the inevitable conclusion that the final decision is unsupported by the substantial evidence rule.

The hypothetical questions posed to the vocational expert were based upon assumptions harvested from the record.  There is no hard rule or perfect method of asking hypothetical questions.   See Rodriguez-Gonzalez v. Astrue, 854 F. Supp.2d at 186.  Hypothetical questions need only "reasonably incorporate [] the disabilities recognized by the [administrative law judge]". Velez-Pantoja v. Astrue, 786 F. Supp. 2d at 469, quoting Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994, citing Morris v. Bowen, 864 F.2d 333, 336 (5th Cir. 1988).  In this particular case, were there any vacuum in the questioning of the vocational expert by the

CIVIL 13-1464 (ADC)                    10

administrative law judge, that vacuum was filled by the pointed and focused questions of counsel Arquer Roman.

    The administrative law judge applied a thorough and longitudinal analysis of the evidence of record,  engaging in the traditional weighing of difficult and conflicting evidence.   The administrative law judge used the vocational expert to help determine plaintiff's residual functional capacity.    The questions in sum reflected the spectrum of plaintiff's possible limitations.  The administrative law judge was also aided by Psychiatric Review Technique Forms of Dr. C. Jusino Berrios  (Tr. at 565-78, 586-99) as well as his mental residual functional capacity assessment which reflected at best moderate limitations. (Tr. at 600-02). The Psychiatric Review Technique Forms reflect a consideration of the treatment of Dr. Perez. (Tr. at 577, 598) in reaching their conclusions.  Dr. Berrios found moderate functional limitations and no evidence of decompensation, also finding plaintiff's allegations partially credible and not supported by the preponderance of the medical evidence of record. Major depression was diagnosed.  A current mental residual functional capacity assessment by Dr. Israel Gonzalez dated August 18, 2011 showed no greater restrictions than moderate limitations in sustained concentration and persistence, understanding and memory, social interaction, and adaptation. (Tr. at 600-04).  Dr. Gonzalez concluded that the overall longitudinal evidence supported a moderate condition.  (Tr. at 602).  Plaintiff was the subject of a current physical residual functional capacity assessment by Dr.  Ramon A. Ruiz Alonso, neurologist, on January 26, 2012.  (Tr. at 618-25). The primary diagnosis was lumbar and cervical myositis, and the secondary diagnosis was morbid

CIVIL 13-1464 (ADC)                    11

obesity.[4]  Plaintiff could occasionally lift or carry 20 lbs, and frequently carry 10 lbs. She could stand and/or walk, and sit (with normal breaks) for about 6 hours in an 8-hour workday. There were no postural, environmental, communicative, manipulative, or visual limitations. These assessments aided the administrative law judge in translating medical impairments into functional terms.

E. RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

Furthermore, in relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the GRID, is appropriate.  If the applicant's limitations are exclusively exertional, then the Commissioner can meet the burden through the use of a chart contained in the Social Security regulations.  20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952 (1983).   If the facts of the applicant's situation fit within the GRID's categories, the GRID "directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However, if the applicant has non-exertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)), that restrict his ability to perform jobs he would

---

[4]Plaintiff weighed 233 lbs. on October 28, 2011 and was 5'4" tall. (Tr. at 607). On July 21, 2011, she weighed 242 lbs. (Tr. at 269). On March 11, 2011, she weighed 218 lbs. (Tr. at 193). The administrative law judge determined that there is no evidence within the medical record that plaintiff's combined impairments are greater than might be expected without the obesity. (Tr. at 23).

CIVIL 13-1464 (ADC)                    12

otherwise be capable of performing, then the GRID is only a "framework to guide [the] decision."  20 C.F.R. § 416.969a(d) (2001); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001).  In the case before the court, the administrative law judge correctly used the GRID as a framework for decision-making.  (Tr. at 30).

The administrative law judge clearly made credibility determinations as to the weight given to different evidence including plaintiff's own statements. While the administrative law judge found that the symptoms could reasonably cause the alleged impairments, the administrative law judge disagreed with plaintiff's statements in relation to their intensity, persistence and limiting effects of the symptoms and found them not credible because they were inconsistent with his residual functional capacity assessment, particularly since Dr. Perez consistently described plaintiff as alert, oriented in three spheres, cooperative, communicative, and calmed. (Tr. at 29, 112, 115, 119, 123, 125, 143, 148, 164, 173).  Along with these descriptions went sadness, poor judgment and insight.

Plaintiff was never hospitalized for a mental condition[5] and Dr. Perez's report reflect a constancy in plaintiff's ability to understand, cooperate, and interact, during and after the period that plaintiff was gainfully employed.  She performs some household chores. She bathes and gets dressed by herself.   She has decreased libido.  This does not downplay the list of symptoms which plaintiff suffers, but that the record invites a weighing of evidence which is not one-sided and pointed only to a possible finding of disabled.

F. CONCLUSION

---

[5]There is no medical evidence of hospitalization although plaintiff refers to two hospitalizations, one in 2008 and another one after 1994.

CIVIL 13-1464 (ADC)                    13

The court's function is to ascertain whether there is evidence in the record to sustain the administrative law judge's reasoning.    "Substantial evidence" is more than a "mere scintilla," see Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971), in other words, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; see Currier v. Sec'y of Health & Human Servs., 612 F.2d 594, 597 (1st Cir. 1980).  Along that line, the power to resolve conflicts in the evidence lies with the Commissioner, not the courts. Id.; see Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).  In the resolution of such conflicts, I cannot say that the substantial evidence rule has been violated.  And if there is a substantial basis in the record for an administrative law judge's decision, the court must affirm the decision, whether or not another conclusion is possible.  See Ortiz v. Sec'y of Health & Human Svcs., 955 F.2d 765, 769 (1st Cir. 1991); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d at 144.

G. RECOMMENDATION

In view of the above, and notwithstanding the excellent memorandum of law, I find that the administrative law judge has complied with the requirements of the substantial evidence rule.  See Richardson v. Perales, 402 U.S. at 401, 91 S. Ct. 1420 (1971).   Since there is no good cause to remand, it is my recommendation that the final decision of the Commissioner be affirmed and that this action be dismissed.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation.   The written objections must specifically

CIVIL 13-1464 (ADC)                    14

identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466 (1985); School Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010);  Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982).

At San Juan, Puerto Rico, this 14th day of January, 2015.

S/JUSTO ARENAS
United States Magistrate Judge